1    **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                  **FOR THE DISTRICT OF ARIZONA**

8

9    Chaniele Williams,                              No. CV-20-00451-PHX-GMS

10              Plaintiff,                            **ORDER**

11   v.

12   Commissioner     of    Social    Security
     Administration,

13

14              Defendant.

15

16          At   issue   is   the   Commissioner   of   Social   Security   Administration's

17   ("Commissioner") denial of Plaintiff Chaniele Williams' ("Plaintiff") application for

18   disability insurance benefits.  Plaintiff filed a Complaint (Doc. 1) with this Court seeking

19   judicial review of that denial.  For the following reasons, the Court reverses and remands

20   the Administrative Law Judge's ("ALJ") decision (Doc. 14–3 at 15–35), as upheld by the

21   Appeals Council, *id.* at 1–9.

22                                  **BACKGROUND**

23          Plaintiff is a former clean-up worker and home health aid.  Plaintiff alleges disability

24   beginning on April 1, 2016 ("onset date").  *Id.* at 18.  Her claim was denied initially on

25   September 30, 2016, and upon reconsideration on November 22, 2016.  *Id.*  On November

26   28, 2018, she was granted a hearing.  *Id.*  On March 4, 2019, the ALJ denied Plaintiff's

27   Application, and on January 3, 2020, the Appeals Council denied Plaintiff's Request for

28   Review.  *Id.* at 1.

1
2
3
4
5
6
7
8
9

The ALJ evaluated Plaintiff's disability based on the following severe impairments: diabetes mellitus, status-post right femur fracture, status-post left ankle fracture, affective disorder, generalized anxiety disorder, agoraphobia with panic disorder, PTSD, and substance abuse. *Id.* at 21.   Ultimately, the ALJ concluded that Plaintiff was not disabled from the onset date through December 31, 2018—Plaintiff's date-last-insured. *Id.* at 22. The ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.*   Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC"):

10
11
12
13
14
15

> [Plaintiff] had the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) except she must avoid concentrated exposure to temperature extremes, cannot be exposed to dangerous machinery and unprotected heights, can frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl, never climb ladders, ropes and scaffolds, would be limited to occupations not performed in a fast paced product environment, involving relatively few work place changes and which require no more than occasional interaction with supervisors, coworkers and members of the public.

16
17

*Id.* at 24.   Accordingly, the ALJ found that Plaintiff could return to her past relevant work as a clean-up worker and home health aid. *Id.* at 29.

18

**DISCUSSION**

19

**I.    Legal Standards**

20
21
22
23
24
25
26
27
28

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).   The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).   Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.*   To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.*   Generally, "[w]here the evidence is

1    susceptible to more than one rational interpretation, one of which supports the ALJ's

2    decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954

3    (9th Cir. 2002) (citations omitted).

4         To determine whether a claimant is disabled for purposes of the Act, the ALJ

5    follows a five-step process.  20 C.F.R. § 404.1520(a).  The claimant bears the burden of

6    proof on the first four steps, but the burden shifts to the Commissioner at step five.  *Tackett*

7    *v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  At the first step, the ALJ determines whether

8    the claimant is presently engaging in substantial gainful activity.    20 C.F.R.

9    § 404.1520(a)(4)(i).  At step two, the ALJ determines whether the claimant has a "severe,"

10   medically determinable physical or mental impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  At

11   step three, the ALJ considers whether the claimant's impairment or combination of

12   impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P

13   of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is automatically

14   found to be disabled.  *Id.*  At step four, the ALJ assesses the claimant's RFC and determines

15   whether the claimant is still capable of performing past relevant work.    20 C.F.R.

16   § 404.1520(a)(4)(iv).  If not, the ALJ proceeds to the fifth and final step, where she

17   determines whether the claimant can perform any other work in the national economy

18   based on the claimant's RFC, age, education, and work experience.    20 C.F.R.

19   § 404.1520(a)(4)(v).  If not, the claimant is disabled.  *Id.*

20   **II.    Analysis**

21        Plaintiff raises two arguments on appeal.  First, Plaintiff challenges the ALJ's

22   rejection of Karl Marku, M.D.'s ("Dr. Marku") assessment.  (Doc. 15 at 11.)  Second,

23   Plaintiff challenges the ALJ's rejection of Plaintiff's symptom testimony.  *Id.* at 17.  The

24   Court finds that the ALJ erred in her rejection of Dr. Marku's assessment and Plaintiff's

25   symptom testimony.

26        **A. Dr. Marku**

27        The determination of a claimant's RFC is an issue reserved for the Commissioner.

28   20 C.F.R. § 404.1527(d)(2).  In formulating the RFC, the ALJ evaluates all medical

1    opinions in the record and assigns a weight to each.   20 C.F.R. §§ 404.1527(b),

2    404.1527(c).  An ALJ must resolve any conflicts between medical opinions.  *Morgan v.*

3    *Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).  The ALJ may assign lesser

4    weight to a controverted opinion of a treating physician, as is the case here, if the ALJ

5    articulates "specific and legitimate reasons supported by substantial evidence."  *Lester v.*

6    *Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  An ALJ satisfies the "substantial evidence"

7    requirement by providing a "detailed and thorough summary of the facts and conflicting

8    clinical evidence, stating [her] interpretation thereof, and making findings."  *Garrison v.*

9    *Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

10   　　　　The ALJ afforded no weight to the opinion of Dr. Marku.  (Doc. 14–3 at 27.)  Dr.

11   Marku opined that Plaintiff had severe impairment in her ability to relate to other people

12   and moderately severe impairment in her ability to appropriately respond to co-workers

13   and customary work pressures.  *Id.*  The ALJ stated that the impairments found by Dr.

14   Marku are "essentially disabling" but that the "undersigned finds the evidence best

15   supports the limitations in the residual functional capacity in this decision."  *Id.*  The ALJ

16   then listed several reasons for her rejection of Dr. Marku's opinion.  The Court finds that

17   the ALJ erred in her rejection of the opinion.

18   　　　　First, the ALJ rejected the opinion because Plaintiff testified that she cares "for her

19   two very young children independently[,]" that she "cooks, goes grocery shopping, and

20   does laundry[,]" that she "picks her children up from school and is able to drive[,]" and

21   that she was able to drive cross-country in 2017 with her two children for the majority of

22   the way alone.  *Id.* at 27–28.  The ALJ also noted that Plaintiff could read the Bible and

23   pray three times a day and that she was able to "independently, accurately, legibly and in

24   a concise manner" complete her Function Report-Adult and that, in the report, Plaintiff

25   stated that she can drive, shop in stores, and care for her pets.  *Id.* at 28.

26   　　　　A conflict between a claimant's daily activities and the severity of the symptoms

27   described by a treating physician can be a specific and legitimate reason to reject an

28   opinion.  *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).  However, the ALJ did

1    not explain how these activities conflict with Dr. Marku's findings on Plaintiff's ability to

2    respond appropriately to other people and customary work pressures or how these activities

3    translate into the ability to handle employment.  Moreover, the ALJ overstated Plaintiff's

4    ability to accomplish these daily activities.  For instance, Plaintiff testified that even when

5    her four-year old is with her alone at home, she "can't help" but fall asleep, leaving her

6    child to have to constantly wake her up for assistance.  (Doc. 14–4 at 211, 226.)  Plaintiff

7    also testified that when her husband is not working, he "does everything," *id.* at 229, she

8    only drives if she needs to pick up her kids but doesn't otherwise because of panic attacks,

9    *id.* at 203, and that she often calls someone else to pick up her kids, *id.* at 229.  Additionally,

10   in her answers to the Function Report-Adult, Plaintiff stated that she does not take care of

11   pets but that her mom "does the hard parts" and that she shops maybe once or twice a

12   month depending on how she feels.  (Doc. 14–8 at 404, 406).  After a review of the record,

13   Plaintiff's daily activities are not in tension with Dr. Marku's opinion.  *See, e.g.*, *Ghanim*,

14   763 F.3d at 1162 (finding a claimant's daily activities to not conflict with medical opinions

15   where, although the claimant could perform basic chores and occasionally socialize, the

16   record revealed that "he relied heavily on his caretaker, struggled with social interactions,

17   and limited himself to low-stress environments").

18          Second, the ALJ rejected Dr. Marku's opinion because Plaintiff scored a 26/30 on

19   the Folstein Mini Mental Examination, placing her in the "mild impairment range."  (Doc.

20   14–3 at 28.)  This examination measured Plaintiff's cognitive functioning, not Plaintiff's

21   affective, generalized anxiety, and agoraphobia with panic disorders.  (Doc. 14–12 at

22   1064.)  "[O]bservations of cognitive functioning during therapy sessions do not contradict

23   . . . symptoms of depression and social anxiety."  *Ghanim*, 763 F.3d at 1164.  As Dr.

24   Marku's opinion was not limited to assessing cognitive issues, Plaintiff's score on this

25   examination is not a legitimate reason for rejecting Dr. Marku's opinion.  *See, e.g.*, *Morris*

26   *v. Berryhill*, 358 F. Supp. 3d 875, 882–83 (D. Ariz. 2019) (rejecting the ALJ's reliance on

27   the findings of a mini-mental status examination that did not address the plaintiff's

28   limitations from her schizoaffective and depressive disorders).

The ALJ's third reason for rejecting Dr. Marku's opinion was inconsistency with other medical evidence in the record. "[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The ALJ noted that Plaintiff would "often present with normal affect, normal mood, without hallucinations, with normal cognitive function, with normal judgment and insight as well as normal thought content." (Doc. 14–3 at 28) (citing Doc. 14–9 at 480, 507, 562, 600, 607, 653, 659, 662, 665, 673, 676.) The ALJ also noted that during a mental status assessment in June 2016 Plaintiff was "well-groomed, maintained good eye contact, had normal speech, was fully oriented, had spontaneous thought process and productivity, relevant continuity of thought, concrete abstract thinking, average intellectual functioning, no memory impairment, 'moderately' impaired concentration, and 'moderately' impaired social judgment." *Id.* (citing Doc. 14–9 at 557.)

This reasoning is not supported by substantial evidence. The ALJ's citations to Doc. 14–9, pages 600 and 607 are from before Plaintiff's onset date and the ALJ's citations to Doc. 14–9, pages 653, 659, 662, 665, 673, and 676 are from visits with primary care and orthopedic doctors for Plaintiff's physical conditions. *See, e.g.*, *Kamala S. B. v. Comm'r of Soc. Sec.*, No. C18-5914 JLR-TLF, 2019 WL 5749410, at *4 (W.D. Wash. Oct. 8, 2019) (finding citations to physical exams to be unpersuasive in rejecting a doctor's opinion because "[w]hile each of the[] cited examinations note that plaintiff had a normal mood and affect, they do not show any mental status evaluation or otherwise examine plaintiff's mental health status"). Additionally, the ALJ fails to note the abnormal clinical findings in the citations she provides, such as the Plaintiff's reports of hallucinations and the doctor's observation of an anxious and depressed mood in her July 2016 visit, (Doc. 14–9 at 562), and the doctor's observation during the mental examination in June 2016 of an anxious, depressed mood and blunted affect, *id.* at 557. Although the citations the ALJ provides do contain some normal clinical findings, "[o]ccasional symptom-free periods . . . are not inconsistent with disability." *Lester*, 81 F.3d at 833. Accordingly, the citations

1   the ALJ relies on fail to show that Dr. Marku's opinion is unsupported by the record as a

2   whole.

3       Fourth, the ALJ rejected Dr. Marku's opinion because there is evidence that

4   Plaintiff's "present limitations from mental impairment may be situational as the claimant

5   reported to providers on admission to Henderson Mental in August 2016 that her husband

6   had recently left her to raise their two young children alone." (Doc. 14–3 at 28.)  The ALJ

7   did not elaborate on why Plaintiff's mental impairments may be situational.  As there is

8   evidence in the record that Plaintiff continued to struggle with symptoms from her mental

9   impairments since reuniting with her husband in September 2017, the Court finds this

10  reason insufficient in context to support a rejection of Dr. Marku's opinion.  *See, e.g.*,

11  (Doc. 14–10 at 749, 764, 859.)

12      Finally, the ALJ noted that Plaintiff was "cooperative with her providers and she

13  was cooperative, attentive, responsive and did not require redirection at the hearing on her

14  application for benefits" and that the record "does not contain evidence of evictions, firings

15  due to interpersonal conflicts, fear of strangers, avoidance of interpersonal relationships or

16  personal isolation." (Doc. 14–3 at 28.)  The Court finds these reasons insufficient for the

17  following reasons.

18      First, the ALJ does not cite to the record to support her finding that Plaintiff was

19  cooperative with her providers.  Instead, Plaintiff cites to portions of the record that indicate

20  Plaintiff has difficulty cooperating with others, including her providers.  *See, e.g.*, (Doc.

21  14–4 at 214) (during her testimony, Plaintiff described screaming at a provider who

22  attempted to draw her blood); (Doc. 14–9 at 555) (at doctor's visit, Plaintiff reported hitting

23  and scratching a woman at Walmart); (Doc. 14–12 at 1156) (at a doctor's visit, Plaintiff

24  reported she had a pending court date for a disorderly conduct charge resulting from a

25  verbal altercation with her daughter's principal).  Accordingly, this reason is not specific

26  and legitimate.

27      Additionally, Plaintiff's cooperation at the hearing provides little, if any, support for

28  the ALJ's rejection of Dr. Marku's opinion.  *See Perminter v. Heckler*, 765 F.2d 870, 872

1  (9th Cir. 1985) ("The ALJ's reliance on his personal observations of [plaintiff] at the

2  hearing has been condemned as 'sit and squirm' jurisprudence."); *Gallant v. Heckler*, 753

3  F.2d 1450, 1455 (9th Cir. 1984) ("The fact that a claimant does not exhibit physical

4  manifestations of prolonged pain at the hearing provides little, if any, support for the ALJ's

5  ultimate conclusion that the claimant is not disabled or that his allegations of constant pain

6  are not credible."). Although Plaintiff's cooperation at the hearing and lack of evidence of

7  evictions, firings due to interpersonal conflicts, fear of strangers, avoidance of

8  interpersonal relationships, and personal isolation arguably conflict with Dr. Marku's

9  finding of disabling social limitations, these reasons, alone, are too weak to uphold the

10  ALJ's conclusion. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (courts

11  may not uphold an ALJ's conclusion by "isolating a specific quantum of supporting

12  evidence").

13  Accordingly, for the reasons discussed above, the Court finds that the ALJ

14  committed legal error in rejecting Dr. Marku's opinion. This error is not harmless as the

15  vocational expert testified that Dr. Marku's assessed limitations would preclude sustained

16  work. (Doc. 14–4 at 240.)

17  **B. Symptom Testimony**

18  Because the severity of an impairment may be greater than what can be shown by

19  objective medical evidence alone, the ALJ considers a claimant's subjective testimony

20  regarding pain and symptoms. 20 C.F.R. § 404.1529(c)(3); *Burch v. Barnhart*, 400 F.3d

21  676, 680 (9th Cir. 2005). The claimant, however, must still show objective medical

22  evidence of an underlying impairment that could reasonably be expected to produce the

23  pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(a). However,

24  while such evidence is required to show the existence of an underlying impairment, "the

25  [ALJ] may not discredit the claimant's testimony as to subjective symptoms merely

26  because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228,

27  1234 (9th Cir. 2010). Nevertheless, the ALJ evaluates the testimony in relation to the

28  objective medical evidence and other evidence in determining the extent to which the pain

1   or symptoms affect her capacity to perform basic work activities.    20 C.F.R.

2   § 404.1529(c)(4).

3           Unless there is evidence of malingering by the claimant, the ALJ may only reject

4   symptom testimony for reasons that are specific, clear, and convincing.  *Burch*, 400 F.3d

5   at 680.  In evaluating the credibility of a claimant's testimony, the ALJ may consider the

6   claimant's "reputation for truthfulness, inconsistencies either in his testimony or between

7   his testimony and his conduct, his daily activities, his work record, and testimony from

8   physicians and third parties concerning the nature, severity, and effect of the symptoms of

9   which he complains."  *Light v. Soc. Sec. Admin., Comm'r*, 119 F.3d 789, 792 (9th Cir.

10  1997); *see* 20 C.F.R. § 404.1529(c)(4).   General findings pertaining to a claimant's

11  credibility are not sufficient.  *Lester*, 81 F.3d at 821.  Rather, "the ALJ must specifically

12  identify the testimony she or he finds not be credible and must explain what evidence

13  undermines the testimony."  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

14  In doing so, the ALJ need not engage in "extensive" analysis but should, at the very least

15  "provide some reasoning in order [for a reviewing court] to meaningfully determine

16  whether [the ALJ's] conclusions were supported by substantial evidence."  *Brown-Hunter*

17  *v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).

18          Here, the ALJ determined that Plaintiff's medically determinable impairments could

19  reasonably be expected to cause the alleged symptoms but that her statements concerning

20  the intensity, persistence, and limiting effects of these symptoms were not "entirely

21  consistent" with evidence in the record.  (Doc. 14–3 at 25.)  As the ALJ cited no evidence

22  of malingering, the ALJ was required to give specific, clear, and convincing reasons for

23  rejecting Plaintiff's testimony.  The Court finds that the ALJ failed to meet this standard.

24          First, the ALJ rejected Plaintiff's testimony because greater limitations were not

25  supported by medical evidence in the record and Plaintiff's daily activities.  *Id.* at 25–26.

26  The ALJ listed several documents in the record that showed normal clinical findings and

27  listed daily activities Plaintiff can perform.  *Id.*  "Inconsistencies between a claimant's

28  testimony and the claimant's reported activities [can] provide a valid reason for an adverse

credibility determination," *Burrell v. Colvin*, 775 F.3d 1133, 1137–38 (9th Cir. 2014), and inconsistencies between a claimant's symptom testimony and objective clinical findings is a factor that an ALJ may consider, 20 C.F.R. § 404.1529(c)(2).  Here, however, the ALJ did not elaborate on which daily activities and medical records conflicted with which part of the Plaintiff's testimony.  The ALJ only generally stated that "claimant has alleged that physical and mental impairments have resulted in symptoms that would preclude all work in the national economy" and that Plaintiff "subjectively reported suicidal ideation and auditory hallucinations." (Doc. 14–3 at 24–25.)  Such lack of specificity is error.  *See, e.g.*, *Burrell*, 775 F.3d at 1138 (finding the failure to clarify which daily activities conflicted with which portion of the claimant's testimony to be error); *Lacy v. Comm'r of Soc. Sec. Admin.*, No. CV-18-04117-PHX-SPL, 2020 WL 1285948, at *2 (D. Ariz. Mar. 18, 2020) (finding legal error where medical records were discussed at length but never linked to particular symptom testimony and where the ALJ only generally reasoned that the claimant's statements about her daily activities were inconsistent with her allegations of "disabling pain and limitations").  Accordingly, this reason is not clear and convincing.

In rejecting Plaintiff's testimony, the ALJ also noted that records, dated March 26, 2018 through October 26, 2018, reported that Plaintiff was smoking marijuana daily and in large amounts.  (Doc. 14–3 at 26.)  The ALJ then noted that Plaintiff testified she was smoking daily and stopped in November 2017 when she was hospitalized.  *Id.*  Substance abuse is relevant to the ultimate determination of whether a claimant is disabled or not, but the ALJ must first conduct the five-step sequential analysis without determining the impact of substance abuse on the claimant.  *Bustamante v. Massanari*, 262 F.3d 949, 954–55 (9th Cir. 2001).  As the ALJ concluded at step four that Plaintiff could return to work as a clean-up worker or home health aide, Plaintiff's substance abuse is not relevant unless it sheds light on Plaintiff's credibility.  Although inconsistent statements can support an adverse credibility finding, the Court does not find inconsistency here.  Plaintiff did testify that she stopped smoking marijuana after her 2017 hospitalization, but she specified that she only stopped for five months and resumed smoking in November 2017.  (Doc. 14–4 at 206–07.)

1   Plaintiff further testified that between March and October 2018 she was smoking marijuana

2   often.   *Id.* at 205.   Accordingly, this is not a clear and convincing reason for rejecting

3   Plaintiff's testimony.

4          The ALJ also noted that there were periods of time that Plaintiff was not taking her

5   psychiatric medications.   (Doc. 14–3 at 26.)   The ALJ's citation to support this finding,

6   however, is to an exhibit that does not exist.   The Commissioner cites multiple parts of the

7   record that could be used to provide support for the ALJ's position.   (Doc. 16 at 13.)   None

8   of these records are cited by the ALJ, and "[l]ong-standing principles of administrative law

9   require us to review the ALJ's decision based on the reasoning and factual findings offered

10   by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may

11   have been thinking."   *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir.

12   2009).   Therefore, this reason is not clear and convincing.

13          Finally, the ALJ rejected Plaintiff's testimony because of inconsistent statements on

14   marijuana use.   The ALJ noted that Plaintiff reported that she smoked large amounts of

15   marijuana daily during an April 2016 clinical interview but denied drug use in later visits.

16   (Doc. 14–3 at 26.)   This is not a clear and convincing reason for rejecting Plaintiff's

17   testimony because the record the ALJ cites to for the proposition that Plaintiff denied drug

18   use in later visits is to a visit in 2015, the year before the April 2016 clinical interview.

19   (Doc. 14–9 at 506.)

20          Accordingly, for the reasons provided above, the ALJ committed legal error in

21   rejecting Plaintiff's symptom testimony.   This error is not harmless as the vocational expert

22   testified that limitations consistent with Plaintiff's testimony would preclude sustained

23   work. (Doc. 14–4 at 241–42.)

24       **C.  Remand**

25          The credit-as-true rule, if applied here, would result in a remand of Plaintiff's case

26   for a computation and payment of benefits.   *See Garrison*, 759 F.3d at 1020.   It applies if

27   each part of a three-part test is satisfied.   *Id*.   First, the ALJ must have failed to provide

28   sufficient reasons for rejecting the claimant's testimony or medical opinions.   *Id*.   Next, the

1   record must have been fully developed and further administrative proceedings would serve

2   no useful purpose.  *Id*.  Further administrative proceedings serve a useful purpose when

3   there are outstanding conflicts or ambiguities in the evidence that require resolution.

4   *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).  Finally, if

5   the improperly discredited evidence were credited as true, the ALJ would be required to

6   find the claimant disabled.  *Garrison*, 759 F.3d at 1020.  Even if all elements of the credit-

7   as-true rule are met, the Court maintains "flexibility to remand for further proceedings

8   when the record as a whole creates serious doubt as to whether the claimant is, in fact,

9   disabled within the meaning of the Social Security Act."  *Id.*

10        The credit-as-true rule does not apply here because there are significant outstanding

11   conflicts that require resolution before it can be determined if Plaintiff was disabled during

12   the relevant period.  Accordingly,

13        **IT IS THEREFORE ORDERED** reversing the March 4, 2019 decision of the

14   Administrative Law Judge (Doc. 14–3 at 15–35), as upheld by the Appeals Council (Doc.

15   14–3 at 1–9).

16        **IT IS FURTHER ORDERED** remanding this case to the Social Security

17   Administration.   On remand, the Commissioner will conduct any necessary further

18   proceedings, offer the claimant the opportunity for a supplemental hearing, and issue a new

19   decision with evidentiary support for the findings.  The Appeals Council will instruct the

20   ALJ to reevaluate the medical opinion evidence and symptom testimony in accordance

21   with this Order.  The Appeals Council will instruct the ALJ to take further action, as

22   warranted, to complete the administrative record and resolve the above issues.

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28

1      **IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment

2  in favor of Plaintiff, and against Defendant, reversing the final decision of the

3  Commissioner.

4      Dated this 4th day of February, 2021.

5

6  _____
                  G. Murray Snow
7              Chief United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28